1

2

3

4

5

6

7

8                         IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10    MARY J. BAKER,

11              Plaintiff,                    No. CIV S-05-2466 DAD

12        vs.

13    MICHAEL J. ASTRUE,                      ORDER
      Commissioner of Social Security,[1]
14
                Defendant.
15    _____/

16              This social security action was submitted to the court, without oral argument, for

17    ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary

18    judgment.  For the reasons explained below, the undersigned will affirm the decision of the

19    Commissioner of Social Security (Commissioner).

20                            **PROCEDURAL BACKGROUND**

21              On May 12, 2003, plaintiff Mary J. Baker applied for Supplemental Security

22    Income (SSI) benefits under Title XVI of the Social Security Act (Act).  (Transcript (Tr.) at 47-

23    51.)  The Commissioner denied plaintiff's application initially and on reconsideration.  (Tr. at

24    _____

25         [1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.
      Mr. Astrue is substituted as defendant in this suit pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ.
26    P. 25(d)(1).

                                          1

23-33.)  On May 18, 2005, pursuant to plaintiff's request dated January 12, 2003, a hearing was held in Portland, Oregon, before an administrative law judge (ALJ), at which time plaintiff was represented by counsel.  (Tr. at 34, 279-306.)

In a decision issued on July 28, 2005, the ALJ determined that plaintiff was not disabled.  (Tr. at 10-20.)  The following findings were entered:

1.    The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2.    The claimant's an [sic] affective disorder, substance abuse, post-traumatic stress disorder, and  muscle strains/pain are considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(c).

3.    These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4.    The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

5.    The claimant has the following residual functional capacity:  can lift and carry up to fifty pounds on an occasional basis and twenty five pounds on a frequent basis and can sit, stand and walk for about six hours in an eight hour workday.  She is only limited physically in her ability to reach in all directions.  Mentally, she is only moderately limited in her ability to understand, remember and carry out detailed instructions; interact appropriately with the general public; aware of normal hazards and take appropriate precautions; and to set realistic goals or make plans independently of others.

6.    The claimant is a "younger individual between the ages of 45 and 49" (20 CFR § 416.963).

7.    The claimant has "more than a high school (or high school equivalent) education (20 CFR 416.964).

8.    The claimant has no transferable skills from semi-skilled work previously performed as described in the body of the decision (20 CFR § 416.968).

/////

2

1   9.   The claimant has the residual functional capacity to
2        perform a significant range of light work (20 CFR §
         416.967).

3   10.  Although the claimant's exertional limitations do
4        not allow her to perform the full range of light
         work, using Medical-Vocational Rule 203.29 as a
5        framework for decision-making, there are a
         significant number of jobs in the national economy
6        that she could perform.  Examples of such jobs
         include work as production assembler, a light,
7        unskilled job of which there are greater than
         200,000 jobs in the national economy and greater
8        than 6,000 jobs in the region; small products
         assembler, a light, unskilled job of which there are
9        greater than 90,000 jobs in the national economy
         and greater than 900 jobs in the region; and a mail
10       clerk, a light, unskilled job, of which there are
         greater than 150,000 jobs in the national economy
11       and greater than 1,000 jobs in the region.

12  11.  The claimant was not under a "disability," as
         defined in the Social Security Act, at any time
13       through the date of this decision (20 CFR §
         416.920(g).

14  (Tr. at 19-20.)  Plaintiff requested review of the ALJ's decision.  (Tr. at 7-8.)  The Appeals

15  Council declined review on October 7, 2005.  (Tr. at 4-6.)  Plaintiff then sought judicial review

16  pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on December 5, 2005.

17                                    **LEGAL STANDARD**

18          The Commissioner's decision that a claimant is not disabled will be upheld if the

19  findings of fact are supported by substantial evidence in the record as a whole and the proper

20  legal standards were applied.  <u>Schneider v. Comm'r of the Soc. Sec. Admin.</u>, 223 F.3d 968, 973

21  (9th Cir. 2000); <u>Morgan v. Comm'r of the Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999).

22  The findings of the Commissioner as to any fact, if supported by substantial evidence, are

23  conclusive.  <u>See</u> <u>Miller v. Heckler</u>, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

24  such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

25  <u>Morgan</u>, 169 F.3d at 599; <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985) (citing <u>Richardson</u>

26  <u>v. Perales</u>, 402 U.S. 389, 401 (1971)).

1          A reviewing court must consider the record as a whole, weighing both the

2   evidence that supports and the evidence that detracts from the ALJ's conclusion.  <u>See</u> <u>Jones</u>, 760

3   F.2d at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum

4   of supporting evidence.  <u>Id.</u>; <u>see also</u> <u>Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989).  If

5   substantial evidence supports the administrative findings, or if there is conflicting evidence

6   supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, <u>see</u>

7   <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

8   improper legal standard was applied in weighing the evidence, <u>see</u> <u>Burkhart v. Bowen</u>, 856 F.2d

9   1335, 1338 (9th Cir. 1988).

10          In determining whether or not a claimant is disabled, the ALJ should apply the

11  five-step sequential evaluation process established under Title 20 of the Code of Federal

12  Regulations, Sections 404.1520 and 416.920.  <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42

13  (1987).  This five-step process can be summarized as follows:

14              Step one:  Is the claimant engaging in substantial gainful activity?
                If so, the claimant is found not disabled.  If not, proceed to step
15              two.

16              Step two:  Does the claimant have a "severe" impairment?  If so,
                proceed to step three.  If not, then a finding of not disabled is
17              appropriate.

18              Step three:  Does the claimant's impairment or combination of
                impairments meet or equal an impairment listed in 20 C.F.R., Pt.
19              404, Subpt. P, App. 1?  If so, the claimant is automatically
                determined disabled.  If not, proceed to step four.
20
                Step four:  Is the claimant capable of performing his past work?  If
21              so, the claimant is not disabled.  If not, proceed to step five.

22              Step five:  Does the claimant have the residual functional capacity
                to perform any other work?  If so, the claimant is not disabled.  If
23              not, the claimant is disabled.

24  <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

25          The claimant bears the burden of proof in the first four steps of the sequential

26  evaluation process.  <u>Yuckert</u>, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the

4

1   sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098

2   (9th Cir. 1999).

**APPLICATION**

4          Plaintiff advances a number of arguments in her motion for summary judgment.

5   First, plaintiff asserts that her mental impairments met or equaled the criteria for Listing 12.06.

6   Second, plaintiff maintains that the ALJ improperly rejected the opinions of the only psychiatrist

7   who treated plaintiff and the only psychologist who actually examined plaintiff.  Third, plaintiff

8   contends that the ALJ failed to properly credit plaintiff's statements concerning the nature and

9   extent of her pain, fatigue, and functional limitations.  Fourth, plaintiff asserts that the ALJ erred

10  in formulating the hypothetical question he posed to the vocational expert and improperly

11  rejected the opinion of the vocational expert.  The court addresses these arguments below.

12  **I.  Plaintiff's Mental Impairments and the Criteria for Listing 12.06**

13          At step three of the sequential evaluation process, a claimant who demonstrates

14  that she suffers from a severe impairment that is either listed in Appendix 1 of the regulations or

15  equal to a listed impairment will be found disabled without regard to age, education, and work

16  experience.  20 C.F.R. §§ 404.1525(a) and 416.925(a).  The Listing of Impairments in Appendix

17  1 "describes for each of the major body systems impairments that [are] consider[ed] to be severe

18  enough to prevent an individual from doing any gainful activity."  20 C.F.R. §§ 404.1525(a) and

19  416.925(a).  However, a claimant's impairment will not be considered listed solely because the

20  claimant has the diagnosis of a listed impairment; the impairment must satisfy all of the medical

21  criteria of the listing.  20 C.F.R. §§ 404.1525(d) and 416.925(d).  See also Sullivan v. Zebley,

22  493 U.S. 521, 530 (1990); Marcia v. Sullivan, 900 F.2d 172, 175 (9th Cir. 1990).

23          An impairment not listed in Appendix 1 may be found medically equivalent to a

24  listed impairment "if it is at least equal in severity and duration to the criteria of any listed

25  impairment."  20 C.F.R. §§ 404.1526(a) and 416.926(a).  See also Tackett, 180 F.3d at 1099.  If a

26  claimant has multiple impairments, and no individual impairment meets or equals a listed

1  impairment, the Commissioner must review the findings related to all impairments to determine

2  whether the findings are of medical significance equal to those of a listed impairment.  Id.  See

3  also Marcia, 900 F.2d at 175-76; 42 U.S.C. § 423(d)(2)(B); Social Security Ruling (SSR) 83-19

4  ("An impairment 'meets' a listed condition . . . only when it manifests the specific findings

5  described in the set of medical criteria for that listed impairment.").

6          Here, plaintiff asserts that her mental impairments met or equaled the A and B

7  criteria of Listing 12.06, Anxiety Related Disorders:

8          In these disorders anxiety is either the predominant disturbance
        or it is experienced if the individual attempts to master symptoms;
9       for example, confronting the dreaded object or situation in a phobic
        disorder or resisting the obsessions or compulsions in obsessive
10      compulsive disorders.
        The required level of severity for these disorders is met when
11      the requirements in both A and B are satisfied, or when the
        requirements of A and C are satisfied.
12      A.  Medically documented findings of at least one of the
        following:
13      1.  Generalized persistent anxiety accompanied by three out of
        four of the following signs or symptoms;
14      a.  Motor tension; or
        b.  Autonomic hyperactivity; or
15      c.  Apprehensive expectation; or
        d.  Vigilance and scanning; or
16      2.  A persistent irrational fear of a specific object, activity, or
        situation which results in a compelling desire to avoid the dreaded
17      object, activity, or situation; or
        3.  Recurrent severe panic attacks manifested by a sudden
18      unpredictable onset of intense apprehension, fear, terror and sense
        of impending doom occurring on the average of at least once a
19      week; or
        4.  Recurrent obsessions or compulsions which are a source of
20      marked distress; or
        5.  Recurrent and intrusive recollections of a traumatic
21      experience, which are a source of marked distress;
        AND
22      B.  Resulting in at least two of the following:
        1.  Marked restriction of activities of daily living; or
23      2.  Marked difficulties in maintaining social functioning; or
        3.  Marked difficulties in maintaining concentration,
24      persistence, or pace; or
        4.  Repeated episodes of decompensation, each of extended
25      duration.

26  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06A and B.

6

1          With respect to the part A criteria, plaintiff cites her diagnosis of post-traumatic

2  stress disorder (A5) and evidence that she exhibited apprehensive expectation (A1c),

3  hypervigilence (A1), and recurrent and intrusive recollections of a traumatic experience (A5).

4  Since plaintiff does not indicate that she meets a third element of A1, plaintiff appears to be

5  relying solely on A5.  With respect to the part B criteria, plaintiff asserts that the administrative

6  record demonstrates she suffers from marked restriction of activities of daily living (B1) and

7  marked difficulties in maintaining social functioning (B2).

8          Defendant responds that the record does not contain "[a]t least one detailed

9  description of [the claimant's] typical reaction" to anxiety produced by the claimant's disorder.

10  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00D11.  The regulation provides that "[t]he description

11  should include the nature, frequency, and duration of any panic attacks or other reactions, the

12  precipitating and exacerbating factors, and the functional effects."  Id.

13          At step three of the sequential evaluation process, it is the claimant who bears the

14  burden of proof.  See Yuckert, 482 U.S. at 146 n.5.  It was therefore plaintiff's burden in this

15  case to demonstrate her satisfaction of all requirements of listing 12.06.  Plaintiff's motion does

16  not cite to a detailed description that meets the requirements described in § 12.00D11, and

17  plaintiff did not file opposition to defendant's cross-motion for summary judgment.  Moreover,

18  the administrative record does not appear to include a description that meets the requirements of

19  § 12.00D11.

20          Accordingly, the court finds that substantial evidence supports the ALJ's

21  determination that none of plaintiff's severe mental impairments met or equaled the criteria of

22  listing § 12.06.  The ALJ's determination at step three of the sequential evaluation will therefore

23  be affirmed.  See Sprague, 812 F.2d at 1229-30.

24  **II.  The Treating Psychiatrist's and Examining Psychologist's Opinions**

25          It is well-established that the medical opinion of a treating physician is entitled to

26  special weight.  See Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989); Embrey v. Bowen, 849

1    F.2d 418, 421 (9th Cir. 1988).  "As a general rule, more weight should be given to the opinion of

2    a treating source than to the opinion of doctors who do not treat the claimant."  Lester, 81 F.3d at

3    830.  "At least where the treating doctor's opinion is not contradicted by another doctor, it may

4    be rejected only for 'clear and convincing' reasons."  Id. (quoting Baxter v. Sullivan, 923 F.2d

5    1391, 1396 (9th Cir. 1991)).  "Even if the treating doctor's opinion is contradicted by another

6    doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate

7    reasons' supported by substantial evidence in the record for so doing."  Id. (citing Murray v.

8    Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).

9           Here, plaintiff contends that the ALJ rejected the opinions of a treating

10   psychiatrist Dr. Bierman, who saw plaintiff four times in July 2003 and diagnosed bipolar

11   disorder, and the opinions of consultative psychologist Dr. Barry, who examined plaintiff in

12   December 2003 and found plaintiff to be unemployable.

13          Dr. Bierman's treatment notes are found on a single page of the administrative

14   record and address treatment of plaintiff over a brief, two week period in July of 2003.  (Tr. at

15   136.)  Perhaps because the doctor's signature is not clear,[2] the ALJ did not mention Dr. Bierman

16   by name but cited the page on which Dr. Bierman's treatment notes appear and summarized the

17   contents of that page.  (Tr. at 15 (citing Exhibit 3F/79).)  The court is unable to find that these

18   brief treatment notes, that were addressed by the ALJ in his decision, constitute a treating

19   physician's opinion that was rejected.[3]  See Meanel v. Apfel, 172 F.3d 1111, 1113-14 (9th Cir.

20   1999) (rejecting a treating physician's conclusory, minimally supported opinion); see also

21   Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  Plaintiff's argument to the contrary is

22   unpersuasive.

23   _____

24        [2]  Plaintiff included Dr. Bierman's name in a Social Security form providing information
     about her medical records.  (Tr. at 82.)

25        [3]  The court notes that even in his one page of treatment notes over a two week period Dr.
     Bierman described plaintiff as planning on becoming stabilized on medication, appearing rational
26   and demonstrating no side effects from medication.

1    The ALJ discussed Dr. Barry's opinion in detail and compared its conclusions

2  with other evidence concerning the diagnoses of bipolar disorder and PTSD.  (Tr. at 17.)  The

3  court finds that the ALJ sufficiently stated specific and legitimate reasons supported by

4  substantial evidence in the record for not fully crediting Dr. Barry's assessment of plaintiff's

5  condition rendered on December 11, 2003.[4]  See Bayliss v. Barnhart, 427 F.3d 1211, 1216-17

6  (9th Cir. 2005); Batson v. Comm'r, 359 F.3d 1190, 1195 (9th Cir. 2004);  Lester, 81 F.3d at 830-

7  31.  Again, plaintiff's argument to the contrary is unpersuasive.

8  **III.  Plaintiff's Testimony**

9    Turning to plaintiff's claim that the ALJ failed to credit her testimony, the court

10  notes that it is well-established that the determination of credibility is a function of the ALJ

11  acting on behalf of the Commissioner.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).

12  Indeed, questions of credibility and resolution of conflicts in the testimony are functions solely of

13  the Commissioner.  Id.; Morgan, 169 F.3d at 599.  For this reason, an ALJ's assessment of

14  credibility should, in general, be given great weight.  Nyman v. Heckler, 779 F.2d 528, 531 (9th

15  Cir. 1985).

16    Nonetheless, an ALJ's rejection of a claimant's testimony must be supported by

17  specific findings.  Morgan, 169 F.3d at 599; Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir.

18  1993) (citing Miller, 770 F.2d at 848).  Once a claimant has presented objective medical

19  evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to

20  the severity of his or her symptoms merely because the testimony is not corroborated by the

21  objective medical evidence.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Reddick v.

22

23    [4]  In this regard, the ALJ noted that Dr. Barry himself discounted any diagnosis of bipolar disorder and also concluded that he could not interpret plaintiff's Minnesota Multiphasic Personality Inventory profile because of her significantly high over endorsement of items.  (Tr. at

24  17.)  The ALJ also discounted Dr. Barry's conclusion because it was a one-time evaluation conducted just after plaintiff had relocated to Portland following a difficult period of time in

25  California that concluded plaintiff was unemployable due to PTSD based solely on plaintiff's self-reported history.  (Id.)  Finally, the ALJ properly noted that more current medical records

26  indicated plaintiff was stabilized and doing well on medication with no new symptoms.  (Id.)

1   <u>Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998); <u>Light v. Soc. Sec. Admin.</u>, 119 F.3d 789, 792 (9th

2   Cir. 1997).  Rather, "'the ALJ can reject the claimant's testimony about the severity of [his or]

3   her symptoms only by offering specific, clear and convincing reasons for doing so.'"  <u>Light</u>, 119

4   F.3d at 792 (quoting <u>Smolen v. Chater</u>, 80 F.3d 1273, 1281 (9th Cir. 1996)).  <u>See also</u> <u>Reddick</u>,

5   157 F.3d at 722.  In evaluating a claimant's subjective testimony regarding the severity of his or

6   her symptoms, an ALJ may consider the presence or absence of supporting objective medical

7   evidence along with other factors.  <u>See</u> <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 346 (9th Cir. 1991);

8   <u>see</u> <u>also</u> <u>Smolen</u>, 80 F.3d at 1285.  Ordinary techniques of credibility evaluation may be

9   employed, and the adjudicator may take into account prior inconsistent statements or a lack of

10  candor by the witness.  <u>See</u> <u>Fair</u>, 885 F.2d at 604 n.5.

11          Here, plaintiff argues that the ALJ failed to credit her statements as to the nature

12  and extent of her pain, fatigue, and functional limitations despite medical evidence of underlying

13  impairments which could be expected to produce her symptoms.  While plaintiff testified that she

14  is totally unable to work, the ALJ made specific and detailed findings in not fully crediting that

15  testimony.  The ALJ's decision summarized the testimony given by plaintiff after discussing all

16  the evidence in the record and evaluated plaintiff's allegations and testimony regarding her

17  impairments and the limitations they impose upon her in light of the record.  (<u>See</u> tr. at 17-18.)

18  The court finds that the ALJ fairly characterized the record and sufficiently stated specific, clear

19  and convincing reasons for not fully crediting plaintiff's testimony regarding her limitations and

20  their impact on her ability to work.  <u>See</u> <u>Tidwell v. Apfel</u>, 161 F.3d 599, 602 (9th Cir. 1998).

21  Plaintiff's argument to the contrary is rejected.

22  **V.  <u>The Hypothetical and the Vocational Expert's Opinion</u>**

23          Finally, the court is unpersuaded by plaintiff's challenge to the ALJ's hypothetical

24  question and the ALJ's treatment of the vocational expert's opinion with regard to the jobs

25  available to plaintiff given her limitations.  In this regard, plaintiff asserts that the ALJ should

26  have included in his hypothetical details of plaintiff's lack of affective control, hypervigilence,

1  frequent irritability, frequent crying, inability to be around people, and fear of leaving the hotel

2  room where she lived.  In addition, plaintiff argues that the ALJ erred when he found, despite the

3  vocational expert's testimony regarding the impact of the deficits from which plaintiff claimed to

4  suffer, that plaintiff retained the capacity to perform a significant number of jobs.

5           At step five of the sequential evaluation, the ALJ is required to question a

6  vocational expert in a manner that properly takes into account the limitations on the plaintiff's

7  abilities to engage in various work-related functions.  See Holohan v. Massanari, 246 F.3d 1195,

8  1208-09 (9th Cir. 2001).  "While the ALJ need not include all claimed impairments in his

9  hypotheticals, he must make specific findings explaining his rationale for disbelieving any of the

10 claimant's subjective complaints not included in the hypothetical."  Light, 119 F.3d at 793.  In

11 this case, the ALJ evaluated plaintiff's allegations and testimony regarding her impairments and

12 stated specific, clear and convincing reasons for not fully crediting plaintiff's testimony in that

13 regard.  The ALJ did expand the hypothetical question to the vocational expert to inquire as to

14 the impact marked attention and concentration deficits on a weekly basis would have on

15 plaintiff's employability.  (Tr. at 304.)  However, as addressed above, the ALJ ultimately

16 properly found that plaintiff suffered from only moderate limitations in her ability to understand,

17 remember and carry out detailed instructions.  (Tr. at 20.)   Accordingly, the ALJ did not err in

18 his treatment of the vocational expert testimony.

19          For the reasons set forth above, the court is unpersuaded by plaintiff's arguments

20 that the ALJ erred by failing to include additional limitations in the hypothetical question posed

21 to the vocational expert and by rejecting the vocational expert's opinion in part.

22 /////

23 /////

24 /////

25 /////

26 /////

1                                    **CONCLUSION**

2         In accordance with the above, IT IS HEREBY ORDERED that:

3         1.  Plaintiff's motion for summary judgment is denied;

4         2.  Defendant's cross-motion for summary judgment is granted; and

5         3.  The decision of the Commissioner is affirmed.

6 DATED: March 30, 2007.

8                             _____

9                             DALE A. DROZD
                            UNITED STATES MAGISTRATE JUDGE

10 DAD:kw
Ddad1/orders.socsec/baker2466.order

12